**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 23-2207**

───────────

POTOMAC COAL COMPANY,

          Petitioner,

     v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; VIRGINIA STRAWSER, on behalf of Richard D. Strawser,

          Respondents.

───────────

On Petition for Review of an Order of the Benefits Review Board. (22-0344 BLA)

───────────

Submitted:  April 11, 2025                              Decided:  August 6, 2025

───────────

Before WYNN and THACKER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

───────────

Petition for review denied by unpublished per curiam opinion.

───────────

**ON BRIEF:** William S. Mattingly, JACKSON KELLY PLLC, Lexington, Kentucky, for Petitioner.  Heath M. Long, Matthew A. Gribler, PAWLOWSKI, BILONIC & LONG, Ebensburg, Pennsylvania, for Respondent.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Potomac Coal Company ("Potomac") petitions for review of a decision of the Benefits Review Board ("the "BRB") affirming the Administrative Law Judge's ("ALJ") award of benefits to Virginia Strawser ("Claimant"), the widow of miner Richard Strawser ("Strawser"), under the Black Lung Benefits Act, 30 U.S.C. §§ 901-944.  We deny the petition for review.

## I.

In order to establish eligibility for black lung benefits, a miner is required to show: "(1) that he has pneumoconiosis, in either its clinical or legal form; (2) that the pneumoconiosis arose out of coal mine employment; (3) that he is totally disabled by a pulmonary or respiratory impairment; and (4) that his pneumoconiosis is a substantially contributing cause of his total disability."  *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 133 (4th Cir. 2015) (cleaned up).

Relevant here, the Black Lung Act allows for "an irrebuttable presumption that a miner is totally disabled due to pneumoconiosis, that a miner's death was due to pneumoconiosis or that a miner was totally disabled due to pneumoconiosis at the time of death" if the claimant can produce:  (a) a chest x-ray showing one or more large opacities in the lungs greater than one centimeter in diameter; (b) a biopsy or autopsy showing massive lung lesions; or (c) a diagnosis by other means showing a condition that reasonably would be expected to yield the results described under (a) or (b).  20 C.F.R. § 718.304. "The condition described by these criteria is frequently referred to as complicated

2

pneumoconiosis, although that term does not appear in the [Act]." *E. Associated Coal Corp. v. DOWCP*, 220 F.3d 250, 255 (4th Cir. 2000) (cleaned up).

Strawser had a minimum of 33 years of underground coal mine employment. He retired in September 1996. He filed this subsequent claim for black lung benefits in October 2019.[1] Dr. Charles Werntz performed the Medical History and Examination on behalf of the Department of Labor in November 2019 and determined that Strawser suffered from simple pneumoconiosis due to his coal mine employment. Of particular relevance here, Strawser had three chest x-rays performed on December 29, 2014; November 18, 2019; and September 9, 2020. He also had a computerized tomography ("CT") scan of his lungs performed on March 1, 2021. Unfortunately, Strawser died on December 5, 2021, before a hearing could be held, and Claimant pursued the claim on behalf of his estate. On January 13, 2021, the District Director issued a Proposed Decision and Order awarding benefits. At Potomac's request, a hearing was held before the ALJ on February 4, 2022. On April 29, 2022, the ALJ issued a decision and order awarding benefits. With regard to the irrebuttable presumption, the ALJ addressed the evidence presented under each prong of § 718.304 for which relevant evidence was presented.

The ALJ first considered the chest x-ray evidence. *See* 20 C.F.R. § 718.304(a). The ALJ was presented with four readings of the three chest x-rays. Dr. Robert Tarver

---

[1] Strawser filed his first claim for black lung benefits in September 2014, but the claim was denied by the District Director in May 2015 for failure to prove total disability due to pneumoconiosis. Strawser did not request a hearing. Accordingly, Claimant was required, in this proceeding, to show that "one of the applicable conditions of entitlement" had "changed since the date upon which the order denying the prior claim became final." 20 C.F.R. § 725.309(c). By virtue of the irrebuttable presumption, she has done so.

3

interpreted the December 2014 and November 2019 x-rays as positive for simple pneumoconiosis. Dr. James Benjamin interpreted the November 2019 x-ray as positive for simple pneumoconiosis. And Dr. Gregory Fino interpreted the September 2020 x-ray as positive for simple pneumoconiosis. None of the x-rays were read as positive for complicated pneumoconiosis. Accordingly, the ALJ found that Claimant failed to establish the existence of complicated pneumoconiosis under the first prong of § 718.304. Because no biopsy or autopsy evidence was submitted to the ALJ for consideration, Claimant also failed to satisfy the second prong of § 718.304.

Turning to the third prong of § 718.304, the ALJ considered three readings of the CT scan that was performed on March 1, 2021. The scan was read by Dr. Kathleen DePonte, Dr. Tarver, and Dr. Fino. Dr. DePonte and Dr. Tarver agreed that CT scans are medically acceptable and relevant to establishing the existence of complicated pneumoconiosis. Dr. DePonte stated that a "CT is beneficial in confirming or denying the presence of simple coal worker's pneumoconiosis and can be beneficial in recognizing simple and complicated coal worker's pneumoconiosis when it is not evident on the routine chest x-rays." J.A. 95. Dr. Tarver similarly reported that a "[c]hest CT scan is more sensitive than chest x-ray for detection and characterization for pulmonary parenchymal abnormalities" and "may be useful in confirming or denying the presence of simple coal workers' pneumoconiosis, as well as documenting the presence of complicated coal workers' pneumoconiosis when not well demonstrated on routine chest xrays." J.A. 111.

In her report of April 27, 2021, Dr. DePonte noted "[f]ine nodular opacities with coalescence consistent with simple coal worker's pneumoconiosis" and "[b]ilateral large

4

opacities consistent with Category A large opacities of complicated coal workers' pneumoconiosis." J.A. 94. Specifically, Dr. DePonte observed a large opacity measuring 13 mm in the right upper lobe and a large opacity measuring 11 mm in the left upper lobe. Dr. DePonte stated that "[t]he large opacities would measure similar in size and greater than one centimeter on a standard chest [x-ray]." J.A. 95.

After Strawser's death and just prior to the hearing, Dr. Tarver and Dr. Fino provided additional readings of the CT scan to Potomac's attorney. Like Dr. DePonte, Dr. Fino observed "fine nodular densities . . . throughout the lungs consistent with simple pneumoconiosis." J.A. 113. Dr. Fino also observed a 14 mm abnormality in the left upper lobe of the miner's lung but could not "distinguish [it] as being either complicated coal workers' pneumoconiosis or a pseudo-plaque." J.A. 113. Therefore, he could not "rule out complicated coal workers' pneumoconiosis." J.A. 113.

In a departure from his interpretation of Strawser's prior chest x-rays (which he read as positive for simple pneumoconiosis), Dr. Tarver found "no small nodules or large masses consistent with [simple or complicated] coal workers' pneumoconiosis" on the CT scan. J.A. 111. He observed two 6-mm nodules in the right lung. It was his impression that the CT findings were "most consistent with interstitial fibrosis" and that there were "no CT findings consistent with coal workers' pneumoconiosis." J.A. 111.

Weighing the strength of the varied opinions, the ALJ first noted that only Drs. DePonte and Tarver made specific findings as to the existence (or not) of complicated pneumoconiosis. And they reached opposite conclusions—Dr. DePonte found complicated pneumoconiosis (as well as simple pneumoconiosis); Dr. Tarver found neither. Dr. Fino's

5

opinion was supportive of the presence of simple pneumoconiosis but was of limited help on the question of complicated pneumoconiosis. Although he observed a large (greater than 1 cm) abnormality in the left upper lobe, he did not definitively say that it represented complicated pneumoconiosis. Therefore, the ALJ assigned little weight to the opinion of Dr. Fino as to complicated pneumoconiosis.

Turning to the other two readings, the ALJ found Dr. DePonte's opinion to be well-reasoned and well-documented and assigned it greater weight on the issue of complicated pneumoconiosis. The ALJ found that Dr. DePonte had made specific findings and explained why she concluded that the large opacities in the right and left lungs were consistent with complicated pneumoconiosis. Dr. Tarver's opinion, in contrast, was not well-reasoned or well-documented. In particular, the ALJ observed that Dr. Tarver's opinion was "incomplete" because, while he "noted [the] abnormalities in the right upper lobe," he did "not address the abnormal finding in the left upper lobe." J.A. 134-35. Having weighed the evidence, the ALJ found that Claimant had shown the existence of complicated pneumoconiosis, was entitled to the irrebuttable presumption of total disability due to pneumoconiosis under § 718.304, and had established that Strawser's pneumoconiosis arose out of his coal mine employment.

The ALJ also found that Claimant met her burden of showing that Strawser suffered from simple pneumoconiosis. On this point, the ALJ credited the opinions of Drs. DePonte and Fino, as well as the opinion of Dr. Werntz, as well-reasoned, well-documented and entitled to greater weight. The ALJ discounted Dr. Tarver's conclusion that Strawser did

6

not have simple pneumoconiosis, finding it to be conclusory and not well-reasoned or well-documented.

Potomac appealed the award of benefits to the BRB, challenging the ALJ's finding that Claimant had established that Strawser suffered from complicated pneumoconiosis and was entitled to the irrebuttable presumption of total disability. The BRB rejected these challenges and affirmed the award of benefits.[2] Potomac now petitions for review of the agency decisions.

## II.

## A.

Our review of agency decisions "is highly deferential." *W. Va. CWP Fund v. DOWCP*, 880 F.3d 691, 697 (4th Cir. 2018). "We review the findings of the ALJ, as affirmed by the Board, to determine if they are supported by substantial evidence and in accordance with the law." *Am. Energy, LLC v. DOWCP*, 106 F.4th 319, 330 (4th Cir. 2024) (cleaned up). In doing so, we "consider whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale in crediting certain evidence." *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015) (cleaned up).

---

[2] Although Claimant proved the existence of simple pneumoconiosis, the ALJ found that Claimant was not entitled to invoke the rebuttable presumption of total disability, *see* 20 C.F.R. § 718.305, because she had failed to establish that Strawser had a totally disabling respiratory or pulmonary impairment, *see* 20 C.F.R. § 718.204. The BRB affirmed, as unchallenged on appeal, the ALJ's finding that Strawser had 33 years of underground coal mine employment and had simple pneumoconiosis. Claimant, however, did not appeal the ALJ's finding that she was not entitled to the § 718.305 rebuttable presumption of total disability.

If the "ALJ has incorrectly weighed the evidence or failed to account for relevant record evidence, deference is not warranted and remand is frequently required." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016). We do not, however, "undertake to reweigh contradictory medical evidence, make credibility determinations, or substitute our judgment for that [of the ALJ]." *Id.* at 252. "[I]t is the province of the ALJ to evaluate the physicians' opinions. As trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert." *Island Creek Coal Co. v. Compton*, 211 F.3d 203, 211 (4th Cir. 2000) (cleaned up). Rather, the "ALJ must examine the reasoning employed in a medical opinion in light of the objective material supporting that opinion, and also must take into account any contrary test results or diagnoses." *Id.*

### B.

Potomac argues that the ALJ erred in finding that Claimant established the existence of complicated pneumoconiosis and was entitled to the irrebuttable presumption of total disability. Potomac does not directly assert that substantial evidence fails to support this finding. Rather, Potomac attacks the ALJ's weighing of the medical evidence and his explanation of his decision. Specifically, Potomac argues that the ALJ failed to (1) properly weigh the x-ray evidence against the CT scan evidence and resolve the "conundrum" presented when the chest x-rays failed to show the large opacity observed on the CT scan; and (2) failed to provide an adequate explanation for why Dr. DePonte's opinion was credited over Dr. Tarver's reading. We disagree.

Claimant was entitled to establish the irrebuttable presumption of total disability through *any* of the three qualifying forms of evidence: (a) chest x-ray; (b) autopsy or

8

biopsy; *or* (c) a diagnosis through other means that shows a condition that reasonably would be expected to yield the results described in (a)—*i.e.*, an opacity greater than one centimeter in diameter. *See* 20 C.F.R. § 718.304. The three diagnostic methods are "stated in the disjunctive." *Eastern*, 220 F.3d at 256. The ALJ must review the evidence under each prong of [the regulation] for which evidence is presented to determine whether complicated pneumoconiosis is present." *Id.* But the "finding of statutory complicated pneumoconiosis may be based on evidence presented under a single prong." *Id.*

That is what happened here. The ALJ considered all of the evidence presented under each of the prongs. The x-rays were not read by any physician as showing a lesion in excess of one centimeter, but the CT scan *was* read by a qualified physician as showing two opacities in excess of one centimeter in diameter. No one asserts that a CT scan cannot qualify as other means of diagnosis or that it is an inferior diagnostic tool. On the contrary, Dr. DePonte and Dr. Tarver agreed that CT scans are particularly useful in documenting the presence of complicated pneumoconiosis when it is not well demonstrated on routine chest x-rays. Accordingly, we see no error in the ALJ's weighing of the x-ray evidence and the CT scan evidence. The x-ray readings, which preceded the CT scan, simply do not undermine the ALJ's conclusion that the third prong of § 718.304 was satisfied by the CT scan reading by Dr. DePonte.

We also reject Potomac's argument that the ALJ provided an inadequate explanation for crediting Dr. DePonte's opinion over Dr. Tarver's opinion on the issue of complicated pneumoconiosis. An ALJ must include an "adequate explanation" for his decision, but it "can be a succinct one." *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir.

9

2013) (cleaned up). "If we understand what the ALJ did and why he did it, we, and the APA, are satisfied." *Lane Hollow Coal Co. v. DOWCP*, 137 F.3d 799, 803 (4th Cir. 1998).

Both Dr. DePonte and Dr. Tarver are Board-certified radiologists and B-readers.[3] Dr. Fino is Board-certified in internal medicine with a subspecialty in pulmonary diseases and is also a B-reader. The ALJ examined and explained the reasoning employed in each of the three medical opinions, compared the evidence and opinions, and explained why and how he credited the opinions of Dr. DePonte and Dr. Fino over the opinion of Dr. Tarver.

Drs. DePonte and Fino both observed fine nodular opacities consistent with simple pneumoconiosis. Dr. DePonte observed large opacities measuring in excess of 1 cm in both the right upper lobe and left upper lobe of Strawser's lung—both of which were consistent with complicated pneumoconiosis. Dr. DePonte explained why the large opacities in the right and left lungs were consistent with complicated pneumoconiosis. Dr. Fino also observed an abnormality in excess of 1 cm in Strawser's left upper lung, which he could not rule out as complicated coal worker's pneumoconiosis. Contrary to Potomac's claim, the ALJ did not discount Dr. Fino's observation that there was a large abnormality in Strawser's left upper lobe. He discounted Dr. Fino's opinion as to complicated pneumoconiosis only because Dr. Fino stated that he could not rule out the diagnosis. The

---

[3] Like the BRB, we also summarily reject Potomac's claim that the ALJ erred because he did not consider Dr. Tarver to be "better" qualified than Dr. DePonte. It is undisputed that Dr. DePonte and Dr. Tarver are dually qualified as B readers and Board-certified radiologists, and the ALJ was not required to assign greater weight to Dr. Tarver because he is also a published professor.

ALJ specifically credited Dr. Fino's opinion, as well as Dr. DePonte's and others, as to the presence of simple pneumoconiosis.

With regard to Dr. Tarver, the ALJ discounted his opinion as to the presence of both simple *and* complicated pneumoconiosis. The ALJ explained that Dr. Tarver's opinion that Strawser did not have even simple pneumoconiosis was conclusory, not well-reasoned or well-documented, and entitled to less weight. With regard to the existence of complicated pneumoconiosis, the ALJ discounted Dr. Tarver's opinion as "incomplete" because he failed to address the abnormal finding in the left upper lobe. Again, that abnormality was observed by both Dr. DePonte and Dr. Fino.

To conclude, we hold that it was well within the ALJ's discretion to reject the conclusory opinion of Dr. Tarver in favor of the more specific opinion of Dr. DePonte. The weighing of such contradictory medical evidence rests with the ALJ, and we will not substitute our judgment for his. *Sea "B" Mining*, 831 F.3d at 252. The ALJ's explanation for crediting the opinion of Dr. DePonte over the opinion of Dr. Tarver was sufficient and, for the reasons set forth above, we have no trouble discerning what the ALJ did and why he did it.[4]

### III.

For the foregoing reasons, we conclude that the ALJ's and BRB's decisions are based upon substantial evidence and are without reversible error. Accordingly, we deny

---

[4] Potomac additionally argues that the BRB erred in holding that any error in the ALJ's explanation was harmless. Although we do not disagree with the BRB's conclusion in this regard, we need not reach the question because there was no error.

the petition for review.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and oral argument would not aid the decisional process.

*PETITION DENIED*